54 CCPA

**Application of Harold G. BAILEY and Fred J. HOBBS.**

**Patent Appeal No. 7719.**

United States Court of Customs and Patent Appeals.

March 30, 1967.

Albert L. Ely, Jr., Cleveland, Ohio, for appellants.

Joseph Schimmel, Washington, D.C. (Fred W. Sherling, Washington, D.C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals, adhered to on reconsideration, rejecting

---

\* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

claim 6 under Rule 196(b) and affirming the examiner's rejection of claims 1–5 and 7–11, in application serial No. 40,544, filed July 5, 1960, entitled "Method of Casting Plastic Products." No claim has been allowed.

The invention is a method of casting plastic articles in which thermoplastic resins "in the form of dry and relatively fine, substantially impalpable powders" are brought into contact with a heated mold. The mold is at the "melting temperature range of the resins, that is, [heated] to the range of temperatures at which the resin softens to the extent that particles commence to coalesce in the absence of extraneous pressure but do not necessarily become so molten as to become a readily flowable liquid * * *." Heat is applied to the powder beyond the point when all of the powder has "coalesced" and "the mass of resin is in a state for which the term 'rough fusion' has been coined." The mold is then cooled and the cast article removed from it.

Claims 1, 4, and 8 are illustrative:

1. The process of casting articles of an elastic thermoplastic resin comprising the steps of obtaining a quantity of said resin in the form of a dry, flowable substantially impalpable powder, placing a substantially dry mass of said powder in contact with a mold surface heated to a temperature at least as high as the fusion temperature of said powder to coalesce and rough-fuse the particles in the mass of powder immediately adjacent said mold surface into a relatively continuous and void-free surface of plastic in contact with said mold surface, said coalescence occurring in the substantial absence of any external pressure on the mass of powder sufficient to impair the free flowability of unfused and uncoalesced powder particles in the mass, and the portion of said mass so coalesced and rough-fused constituting a layer having unfused particles in contact with said layer and adhered to the surface of the layer opposite its surface in contact with the heated mold surface, continuing to apply heat to said rough-fused layer in contact with said mold to cause further coalescence of said rough-fused and adhered particles and to increase the tensile strength of said coalesced mass, and then removing said coalesced mass in the form of a molded article having a surface conforming to the contacted surface of said mold.

4. The process as defined in claim 1 including the step of separating from the coalescing particles and particles adhered thereto any unadhered particles in the initial mass of powder before continuing to apply heat to the coalesced resin particles and resin particles adhered thereto.

8. The process of forming a hollow article having an opening therein comprising the steps of claim 4 and including the steps of employing a hollow mold having an opening into a cavity comprising the mold surface, contacting the mold surface with the mass of said powder in sufficient quantity to fill said mold cavity, and separating unadhered particles by removing them from the cavity after rough fusion of the layer of coalesced particles.

The following references were relied on by the board:

Heisler et al. 2,736,925    Mar. 6, 1956
Delacoste et
al. (Italian)   440,295    Oct. 9, 1948

Heisler et al. disclose a method of casting hollow articles from powdered polyethylene which, in its broader concept, involves application of the powder to a heated mold. It discusses the manufacture of cylindrical containers, the cover and body being formed by somewhat different techniques. The method of casting the latter includes the addition of an excess of polyethylene powder to a mold, rotation of the mold during which the excess powder spills out, cessation of rotation and continued ap-

plication of heat to the now softened and fused powder until it has coalesced into a homogeneous coating. Heisler et al. then disclose that "the fused coating or layer of polyethylene will show a more or less grainy or pebbled appearance and may even assume a smooth somewhat glassy appearance, depending on the temperature of the mold and the extent of transfer of heat from the mold to the fused polyethylene layer thereon." The process is then repeated, restoring to the mold that excess powder which spilled out during the initial rotation. The disclosure notes, "It is possible, however, to avoid the above-described two step inclined-tumbling coating operation, which is preferred, and to carry out the coating of the body mold in a single inclined-tumbling coating operation."

Delacoste et al. teach the single-stage manufacture of hollow, closed articles. This reference was cited by the board, under Rule 196(b) to show "the production of a closed hollow article by utilizing a charge of solid resin equivalent to the weight of the article and rotating the mold to obtain a uniform coating." Appellants' arguments here do not seem to focus upon those deficiencies in the Heisler et al. reference toward which the citation of Delacoste et al. was directed. It is, therefore, unnecessary to discuss further the Delacoste et al. reference.

The board found claims 1–5 and 7–11 at least obvious in view of (and perhaps anticipated by) Heisler et al. and claims 5–7 obvious in view of Heisler et al. and Delacoste et al. The board discussed the claims with some particularity, pointing out the correspondence between process steps in application and reference. Appellants' principal arguments challenge this analysis only insofar as the following points are affected.

(a) When a mass of thermoplastic resin particles is heated *unidirectionally* from a surface maintained at the melting range of the resin, the coalesced mass is outwardly porous but, *provided the mass is so heated in the substantial absence of external pressure,* i. e., pressure other than that attributable to the weight of the particles themselves, the mass of coalesced and coalescing particles is characterized by a substantially void-free film at the interface between the mass and the surface from which heat is supplied. When all of the mass of resin intended to be cast is so coalesced and coalescing, the term "rough fusion" has been coined to describe this stage of the resinous mass. * * *

(b) Up to a maximum, termed "final fusion," continued unidirectional application of heat from the mold surface to the rough-fused mass of resin increases the density of the cast mass and its tensile strength is greatly increased; * * *

It appears, then, that appellants urge patentability on the bases of their unidirectional application of heat to the plastic, the substantial absence of external pressure which characterizes the heating step, and the continued application of heat after the rough fusion stage is reached.

Appellants do not deny that the initial addition of powdered polyethylene to the heated mold surface in the disclosure of Heisler et al. involves a unidirectional application of heat. They point, however, to a subsequent oven heating step "contrary to the basic principle of appellants' process." We do not see how another heating step is contrary to appellants' basic principle. We see no assertion that such a step would deleteriously affect the process as defined by appellant. Finally, we note that in any event appellants' claims are not limited to unidirectional heating.

Appellants' contention with regard to the third basis for patentability, i. e., the continued application of heat after "rough fusion" until "final fusion," is obscure. We take it that appellants do not claim that their application of heat is for a longer time than that of the

reference process. Rather, their approach is typified by the following:

> * * * the Board ignores that none of appellants' claims call for merely applying the requisite quantity of thermoplastic resin powder to a heated mold surface and then allowing the mold to cool. All require the application of heat through the mold surface to bring the overlying or adjacent powder to a stage of rough fusion and then a continued application of heat before the mold is cooled and the final article is removed.

We cannot agree that appellants' heating step is any different from the prior art step merely because it is recited as two steps and the state of the plastic, at the completion of each step, is characterized as "rough fusion" and "final fusion," respectively.

What seems to be appellants' major point is their challenge to the board's finding that the heat application in the reference is carried out in the absence of external pressure. Appellants' claims recite such a limitation.

The solicitor argues that appellants have not proved the criticality of the absence of external pressure and, in the alternative, that the absence of pressure is taught by the reference. The latter was the view adopted by the board. We agree.

Appellants argue that this is an untenable position inasmuch as the Heisler et al. disclosure specifies that an excess of polyethylene powder be added to the mold before rotation—an excess of six or seven pounds of polyethylene in the manufacture of a three or four pound article. Appellants recognize that several of their own claims (e. g., claims 4 and 8) define processes in which an excess of powder is used, but they urge that their excess powder is static and that of the reference, used in a rotating mold, is otherwise.

We are not certain whether this argument embodies an implicit denial of the existence of static pressure or an extraordinary utilization of the applicants' lexicographic privilege. It seems to us that appellants' claims clearly define processes in which static pressure is caused by excess polyethylene. It therefore seems reasonable to infer that pressure attributable to excess powder is consistent with the limitation "in the absence of any external pressure," properly construed. We do not feel that by any reasonable construction of appellants' specification one could find in it "external pressure" defined as pressure induced by excess powder in motion and not by a similar excess at rest.

The decision of the board is affirmed.

Affirmed.